```
              IN THE UNITED STATES DISTRICT COURT

                  FOR THE DISTRICT OF NEBRASKA

WILLIAM J. MOYLE,               )
                                )
            Plaintiff,          )         8:12CV434
                                )
      v.                        )
                                )
CONCRETE INDUSTRIES, INC.,      )      MEMORANDUM OPINION
and ROGER T. CLARKE,            )
                                )
            Defendants          )
                                )
      v.                        )
                                )
MECHANICAL SYSTEMS, INC., and   )
ACUITY INSURANCE COMPANY, its   )
workers' compensation insurer,  )
                                )
      Intervenors/Defendants.   )
_____)
```

This matter is before the Court on defendants' motion (Filing No. 124) for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) for lack of subject matter jurisdiction. Alternatively, the defendants move for a remittitur or new trial pursuant to Federal Rule of Civil Procedure 59(a). The defendants have filed a brief (Filing No. 125) and index of evidence (Filing No. 126) in support of that motion. Plaintiff Moyle filed a brief (Filing No. 137) and index of evidence (Filing No. 138) in opposition of the motion. Intervenors Mechanical Systems, Inc. and Acuity Insurance Co. also filed a brief (Filing No. 139) in opposition of the motion.

The defendants filed their final brief (Filing No. 142), declaration (Filing No. 143), and index of evidence (Filing No. 145).

I.  BACKGROUND

The plaintiff is William Moyle ("Moyle"). The defendants are Roger Clarke, his employer, Concrete Industries of Nebraska City, Nebraska, and its owner, NEBCO Incorporated. All defendants are domiciled in Nebraska (*Id.* at 2-4).

This action arises from a traffic accident in Cass County, Nebraska, that occurred on October 31, 2012. That day, Moyle drove his company's Ford F450 pickup truck northbound on United States Highway 75. Clarke was also driving northbound on Highway 75 in his employer's concrete mixer truck. Clarke was operating the truck in the scope of his employment at Concrete Industries. As Clarke attempted a right turn onto Highway 34, the vehicles driven by Moyle and Clarke collided. The momentum of Moyle's truck and the collision caused his vehicle to leave the roadway and turn on its roof. During the course of these events, Moyle was left a paraplegic. The plaintiff, Moyle, filed the instant action alleging negligence. The defendants, Clarke, Concrete Industries, and NEBCO, filed counter claims against Moyle for negligence.

On January 28, 2014, after a six-day trial, a jury of twelve reached a unanimous verdict for the plaintiff (Filing No. 108) in the amount of $19,607,486.00. The issue before the Court concerns diversity jurisdiction.

II. SUBJECT MATTER JURISDICTION

Moyle asserts federal jurisdiction under 28 U.S.C. § 1332 as a citizen of Montana. Filing No. 1. Under that section, district courts have original subject matter jurisdiction in all civil matters where the controversy exceeds $75,000 and exists between citizens of different states. 28 U.S.C. § 1332. Moyle, as the party seeking federal forum, has the burden of establishing jurisdiction by a preponderance of the evidence. *See Yeldell v. Tuft*, 913 F.3d 533, 537 (8th Cir. 1990) (citing *Blakemore v. Mo. Pac. R.R.*, 789 F.2d 616, 618 (8th Cir. 1986)). Diversity jurisdiction requires each defendant to be a citizen of a different state from each plaintiff. *See id.* (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978)).

The "determination of citizenship for the purpose of diversity is a mixed question of law and fact, but mainly fact." *Altimore v. Mt. Mercy Coll.*, 420 F.3d 763, 768 (8th Cir. 2005) (citing *Blakemore*, 789 F.2d at 618). Simultaneous physical presence and intent to remain in a state indefinitely create

citizenship in that state.  *See id.* (citing *Yeldell*, 913 F.2d at 537)*; see also Homes v. Sopuch*, 639 F.3d 431, at 433 n.2  (8th Cir. 1981).  The existence of diversity of citizenship is determined at the time the suit is instituted, and not when the cause of action arose.  *Yeldell*, 913 F.2d at 537 (citing *Smith v. Snerling*, 354 U.S. 91, 93 n. 1 (1957)).

A.   FACTS

Moyle has consistently claimed citizenship in Montana (Filing No. 125, at 2-3).  The last time Moyle resided in Montana was mid-2011.  Filing No. 126-2, at 7.  After a series of moves, Moyle settled in North Dakota in October 2011 with a friend, Chad Heller ("Heller") (Filing No. 125, at 8; Filing No. 126-2, at 7).  On June 19, 2012, Moyle and Heller traveled to Omaha to see a concert and they decided to move to Omaha (Filing No. 126-2, at 7).  Moyle and Heller came to Omaha numerous times before the final move in order to find lodging and work (*Id.*).  They signed an eleven-month lease and moved to Omaha (Filing No. 126-2, at 8).  In deposition, Moyle stated that he intended to remain in Omaha for the duration of the lease and had no plans thereafter (*Id.*).

On direct examination, Moyle testified that meeting his future fiancée was 90% of the reason he moved to Omaha (*Id.* at 7).  Originally, Moyle lined up a job with a carpet company, but

-4-

after meeting his fiancée in August, Moyle decided the work was too unstable (Filing No. 126-2, at 15; Filing No. 118, at 7-9), so Moyle left his old job, joined the union, started "a grown-up job" at MSI, and planned a career path (Filing No. 118, at 8). At trial, he testified:

> But I figured I was going to be in Omaha a while, as -- meeting Paulina so it was time to get a grown-up job so I joined the union and I started working for Mechanical Systems to plot out basically a career and a path that I could go down rather than the uncertainty of carpet. At the time it was great but I wanted something a little -- job security, I suppose.

(*Id.*). Because of her, Moyle planned to get the "grown-up job," planned on being in Omaha for a while, and wanted job security (*Id.*). From August 2012 until October 31, 2012, the date of the collision, Moyle moved to Omaha, started a new career, and began a serious relationship.

From October 31, 2012, until December 2012, Moyle was hospitalized where he received outpatient care, first in Omaha and then in Lincoln (Filing No. 126-2 at 3-4). In Lincoln, Moyle received therapy at Madonna Rehabilitation Hospital and lived in "Prairie Crossing" with his fiancée (*Id.* at 4).

-5-

Moyle filed his complaint against the defendants on December 19, 2012 (Filing No. 1). Nearly a year after filing his complaint, the parties met for a pre-trial conference. In the pre-trial order, the parties agreed to "uncontroverted facts" that may be accepted as established facts for the purposes of the trial. The first uncontroverted fact is "William J. Moyle is a citizen of Montana" (the "Stipulation"). Filing No. 72. Moyle has intermittently traveled to Montana to visit his parents.[1] With these facts in mind, the Court begins its analysis.

C.   STIPULATION

The plaintiff relies upon *Pittsburgh, C. &. St. L.R. Co. v. Ramsey*, 89 U.S. 322 (hereinafter, "*Pittsburgh*") for the proposition that the Stipulation is binding on the Court. In that matter, Ramsey originally brought an action against the Pittsburgh, Cincinnati, and St. Louis Railway in state court. *Pittsburgh*, 89 U.S. at 323-24. The suit was then transferred to federal court, which required diversity jurisdiction. *Id.* At some point, documents concerning the case were destroyed in a fire. *Id.* at 326. In order to substantiate jurisdiction, the

---

[1] On May 1, 2014, the defendants submitted new evidence to this Court in the form of a Youtube video. The findings of this Court are expressly made without consideration of this video, as its authenticity is unverified and the comments made by Moyle on video are potentially out-of-context.

parties stipulated to the fire and that the transfer was in accordance with statutes. *Id.* The Supreme Court considered the following:

> whether under such circumstances we are confined to what is in terms expressed upon the record sent to us, or whether we may resort to presumptions to give effect to what is expressed.

*Id.* at 327.

The Court found that the restoration of the lost files was not necessary to support jurisdiction. *Id.* The Court reasoned that once the documents conferring jurisdiction reached the Court, the Court was presumed to know their contents and was permitted to act upon that knowledge. *Id.* Parol evidence was admissible "to aid the memory of the court." *Id.*

Especially important for the purposes of this motion, the Court said, "[c]onsent of parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission." The Court concluded that the parties knew jurisdiction was properly asserted, the documents (though destroyed) would have supported a finding of proper jurisdiction, and that "the appearance and admission of the parties was expected and intended to have all the force and

effect which a restoration of the papers could have." *Id.* The Court ruled that lower courts may accept the stipulation as evidence of jurisdiction, in the absence of proof to the contrary. *Id.* at 323, 328-29.

Moyle's reliance upon *Pittsburgh* is misplaced for two reasons. First, a stipulation of citizenship is distinguishable from *Pittsburgh* when other facts belie that stipulation. Second, the admission of citizenship is not merely a question of fact.

Consent to jurisdiction is impermissible. *Pittsburgh*, 89 U.S. at 327. For example, two Nebraska citizens cannot simply agree among themselves that diversity jurisdiction is satisfied.

In the same manner, stipulations may not be used to circumvent the diversity requirement, if those stipulations are otherwise controverted. It would be equally impermissible for two Nebraska citizens to stipulate that one is a citizen of Kansas, and thereby satisfy diversity, despite the facts to the contrary. Such a stipulation is tantamount to consent of jurisdiction. *See Owen Equip. & Elec. Co. V. Kroger*, 437 U.S. 365, 368-70, 377 (1978). Therefore, while the Court will consider the Stipulation as part of its analysis, it will consider other facts, particularly those which arose during trial from the plaintiff himself, to determine whether the requirements of diversity jurisdiction are satisfied. *Cf. Pittsburgh*, at 323,

328-29 (determining stipulations can establish diversity *in the absence of facts to the contrary*); *Janzen*, 302 F.2d at 424 (same).

Second and contrary to the assertions of the plaintiff, a stipulation to citizenship does not close the question of diversity indefinitely, particularly when facts exist to undermine that stipulation. *See Gander v. Livoti*, 250 F.3d 606, 609 (stating stipulations of law are not binding on the court); *see also Blackmore v. Missouri Pac. R. Co.*, 789 F.2d 616, 618 (8th Cir. 1986) (stating determination of citizenship is a mixed question of law and fact). It is well established that subject matter jurisdiction objections are not waiveable. *See Janzen*, 302 F.2d at 424-25; *Russell v. New Amsterdam Cas. Co.*, 325 F.2d 996, 998 (finding no diversity jurisdiction on appeal after trial was held in the district court and judgment was entered against the defendant); *Yeldell*, 913 F.2d at 537; *United States v. Corrick*, 298 U.S. 435, 440 (1936). To the extent that the Stipulation was one of law and to the extent that facts to the contrary subvert the Stipulation, the question of Moyle's citizenship is open for consideration by this Court and the Stipulation cannot foreclose the Court's consideration.

C.   DOMICILE

Moyle moved to Omaha, Nebraska, on July 19, 2012, and thereby satisfied the physical presence element of domiciliary analysis.  However, this fact alone is insufficient to establish domicile, so the Court must determine whether Moyle intended to make Nebraska his home.  *See Spurgeon v. Mission State Bank*, 151 F.2d 702, 705-06 (8th Cir. 1945).

Moyle's statement of domicile is a factor to consider, but it is not dispositive, particularly when evaluating his actions.  *See Texas v. Florida*, 306 U.S. 398, 424-25 (1939); *Maple Island Farm, Inc. v. Bitterling*, 196 F.2d 55, 58 (8th Cir. 1952).  Moyle has repeatedly claimed his parents' home of Montana is his primary residence (Filing No. [126-2](#), at 3, 4).  However, according to his own testimony, Moyle became enamored with Omaha during a concert and decided to transition from Fargo.  He signed an eleven-month lease and began working.  He had no plans after the lease.

Then, in August 2012, Moyle met his fiancée and decided to remain in Omaha.  The record shows that Moyle met his fiancée when he first traveled to Omaha.  Filing No. [118](#), at 6-7.  She was 90% of the reason Moyle moved to Omaha.  Moyle wanted to "be in Omaha a while" with his fiancée.  *Id.* at 8.  He changed his work because his ambitions changed; he needed a more stable job

in order to plant roots in Nebraska.  Moyle's actions show his intent to remain in Nebraska indefinitely.

Moyle has the burden to prove he was domiciled in Montana.  Moyle relies heavily upon the Stipulation to foreclose analysis of the his domicile.  As discussed previously, the Court does not consider the Stipulation dispositive.  The Stipulation on its face does not demonstrate facts to support citizenship in Montana, but rather, it is a conclusory legal determination.  Therefore, the Court affords the Stipulation little weight.

Also, Moyle asserts that Montana was his residence partly because he maintained his Montana driver's license.  Filing No. 138, at 7.  However, he did not actually maintain it.  The Montana DMV sent mail to Moyle at his purported address in Montana.  Moyle failed to respond and his license was suspended without his knowledge.  Filing No. 188, at 21-22.  Only after the accident, three years later, did Moyle learn of the DMV's mail and the suspension.  The Court finds that Moyle's failure to maintain his Montana license weighs against his contention of Montana citizenship.

Once Moyle was present in Nebraska and decided to remain here indefinitely with his fiancée, his change in domicile occurred.  Filing No. 118, at 8; *see Maple Island Farm*, 196 F.2d at 58.  Moyle never established a new domicile elsewhere.  *See*

-11-

*Janzen v. Goos*, 301 F.2d 421, 425 (8th Cir. 1962) (citing *Ellis v. Sw. Constr. Co.*, 260 F.2d 280, 281 (8th Cir. 1958); *Desmare v. United States*, 93 U.S. 605 (1877); Restatement of the Law of Conflict of Laws, § 23). Moyle has failed to meet his burden to establish he was a citizen of Montana. The Court finds Moyle was domiciled in Nebraska at the time he filed the current action in federal court. Therefore, Moyle was domiciled in Nebraska at that time, and the Court lacks jurisdiction over this matter.

III. CONCLUSION

Moyle's domicile was Nebraska in December 2012, and the Court lacks subject matter jurisdiction. Accordingly, the judgment of the Court (Filing No. 108) will be set aside and the Court will dismiss the action pursuant to Federal Rule of Civil Procedure 12(h)(3). *See In re Prairie Island Dakota Sioux*, 21 F.3d 302, 304 (8th Cir. 1994) (citing *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (8th Cir. 1993); Fed. R. Civ. Pro. 12(h)(3)). The Court does not address the alternative arguments for new trial or remittitur. A separate order will be entered in accordance with this memorandum opinion.

DATED this 22nd day of May, 2014.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court